[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 16, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-13692
Non-Argument Calendar

_____

D. C. Docket No. 07-80905-CV-KAM

JESSICA KAMEL,
LANCE KAMEL,

Plaintiffs-Appellants,

versus

KENCO/THE OAKS AT BOCA RATON LP,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 16, 2008)**

Before BIRCH, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Jessica and Lance Kamel ("Kamels") appeal an order by the district court

granting a motion to dismiss their complaint by the appellee, Kenco/The Oaks at Boca Raton LP ("Kenco"). Because the Kamels' complaint does not adequately provide the grounds of their entitlement for relief, we AFFIRM.

## I. BACKGROUND

In October 2005, the Kamels signed a contract with Kenco in which the Kamels agreed to purchase property in a subdivision of The Oaks at Boca Raton and Kenco agreed to build their home on it. The contract specified that Kenco was to complete construction of the residence within "one year and 11 months" of the date of the agreement. R1-1, Exh. A at 1-3. Kenco failed to complete the required construction within the designated time period and the Kamels attempted to revoke the contract, demanding a return of their $160,500 deposit. R1-1, Exh. A at 9. Kenco did not comply and the Kamels responded by filing a complaint with the district court.

In their complaint, the Kamels alleged that Kenco was subject to the requirements of the Interstate Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. § 1701 (2007). According to the Kamels, the ILSA required Kenco to provide them with a printed property report in advance of the signing of the contract. R1-1 at 7-9. Because this did not occur, the Kamels filed their six-count complaint with

three counts brought under federal law and three brought under state law.[1]  Kenco replied with a motion to dismiss, alleging that the contract between the parties was exempt from the ILSA's coverage.  As such, Kenco urged the district court to dismiss Counts II, III and IV as a matter of law as well as the remaining state law claims for lack of subject matter jurisdiction.

The Kamels' appeal turns on whether their contract with Kenco is exempt from the ILSA's coverage.  We address that question now.

## II.  DISCUSSION

We review the district court's grant of a motion to dismiss de novo.  Rivell v. Private Health Care Sys., Inc., 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam).  "The allegations in the complaint are taken as true and construed in the light most favorable to the plaintiffs.  However, the complaint's factual allegations must be enough to raise a right to relief above the speculative level.  The Supreme Court's most recent formulation of the pleading specificity standard [in Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007)] is that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest the required element."  Id. (internal quotations and citations omitted).

---

[1] Two of the federal law claims (Counts II and III) were treated together by the district court as asserting a single cause of action under the ILSA.  The remaining federal law claim was a prayer for declaratory judgment that the contract was illegal.

We have described the ILSA as "an antifraud statute utilizing disclosure as its primary tool" with the principal purpose of "protect[ing] purchasers from unscrupulous sales of undeveloped home sites." Winter v. Hollingsworth Properties, Inc., 777 F.2d 1444, 1447 (11th Cir. 1985). One of the requirements that the ILSA imposes upon developers making use of interstate commerce to sell or lease a property is the obligation to provide the prospective buyer with a property report containing certain prescribed information. See 15 U.S.C. § 1703(a)(1)(B). The property report must be furnished to the buyer before the contract is signed or else the buyer retains the right to revoke the contract for a two-year period following the execution of the contract. Id. § 1703(c). However, the property report requirement does not apply to those sales exempted from the ILSA under § 1702(a)(2) of the Act.

Section 1702(a)(2) of the ILSA reads as follows:

§ 1702. Exemptions
(a) Sale or lease of lots generally. Unless the method of disposition is adopted for the purpose of evasion of this title, the provision of this title shall not apply to –
(2) the sale or lease of any improved land on which there is a residential, commercial, condominium or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years;
....

15 U.S.C. § 1702 (a)(2). At issue in this case is whether the contract between the

Kamels and Kenco actually obligated Kenco to build the residence, as argued by Kenco, or whether the obligation to build was illusory, as argued by the Kamels. If the obligation was illusory, then the § 1702(a)(2) exemption does not apply, Kenco is bound by the ILSA, the Kamels have a right to revoke and the district court erred in granting Kenco's motion to dismiss. Conversely, if the obligation was real, Kenco prevails.

Because the ILSA is a federal statute, federal law governs its interpretation. Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 176, 63 S. Ct. 172, 174 (1942). State contract law, however, is the ultimate arbiter of whether a contract actually "obligates" a seller to erect a building within two years. See Markowitz v. Northeast Land Co., 906 F.2d 100, 105 (3d. Cir. 1990); see also Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act, 61 Fed. Reg. 13596, 13603 (Mar. 27, 1996) [hereinafter, Guidelines]. First, we consider the federal interpretation of the relevant ILSA language.

As the district court noted, the Department of Housing and Urban Development ("HUD") has provided some guidance as to the meaning of the word "obligate." The Guidelines provide that contract "clauses may not alter the obligation of the seller to build" and that the contract "must not allow nonperformance by the seller at the seller's discretion." 61 Fed. Reg. at 13603. In

5

addition, the Guidelines state that "as a general rule delay or nonperformance must be based on grounds cognizable in contract law such as impossibility or frustration and on events which are beyond the seller's reasonable control." Id. Examples include "provisions to allow time extensions for events or occurrences such as acts of God, casualty losses or material shortages." Id. Although the Guidelines are to be given "great deference," Winter, 777 F.2d at 1448, the Guidelines themselves point to state contract law in the jurisdiction in which the building in question is being erected as the ultimate authority on the issue. See 61 Fed. Reg. at 13603 ("Contract provisions which allow for nonperformance or for delays of construction completion beyond the two-year period are acceptable if such provisions are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected."). Because Florida law indisputably governs in this case, we now consider the "obligation" language as interpreted under Florida contract law.

The Florida Supreme Court addressed the ILSA's exemption language in Samara Development Corp. v. Marlow, 556 So. 2d 1097 (Fla. 1990). In Samara, the state supreme court held that "in order for the developer to be 'obligated' to complete the building within two years, the obligation must be unrestricted and the contract must not limit the purchaser's right to seek specific performance or

6

damages." Id. at 1100. Although Samara almost exclusively deals with impermissible limitations on buyers' remedies which are not at issue in this case, Florida courts have also consistently recognized the doctrine of impossibility of performance as a valid basis to excuse performance under the ILSA's two-year obligation-to-construct exemption.

In Florida, as the district court noted, the doctrine of impossibility "refers to those factual situations, too numerous to catalog, where the purposes, for which the contract was made, have, on one side, become impossible to perform." Crown Ice Machine Leasing Co., v. Sam Senter Farms, Inc., 174 So. 2d 614, 617 (Fla. Dist. Ct. App. 1965). However, "where performance of a contract becomes impossible after it is executed, or if knowledge of the facts making performance impossible were available to the promisor [prior to the execution of the contract]," the defense of impossibility is not available. Shore Inv. Co. v. Hotel Trinidad, Inc., 29 So. 2d 696, 697 (Fla. 1947). Foreseeability is a critical determinant in assessing the availability of the defense. Under Florida law, the application of the defense of impossibility of performance is ultimately a fact-specific inquiry and is not confined to a rigid set of factual conditions. See, e.g., Home Design Center-Joint Venture v. County Appliances of Naples, Inc., 563 So. 2d 767, 769 (Fla. Dist. Ct. App. 1990); Crown Ice Machine Leasing Co., 174 So. 2d at 617.

7

Paragraph 7 of the purchase agreement between the Kamels and Kenco reads as follows:

> Seller does, however, agree to substantially complete construction of the Home in the manner specified in this Agreement by a date no later than one (1) year and eleven (11) months from the date Buyer and Seller execute this Agreement, subject however, to delays caused by Buyer or acts of God, the unavailability of materials, strikes, other labor problems, governmental orders, or other events which would support a defense based upon impossibility of performance for reasons beyond the Seller's control.

R1-1, Exh. A at 3.  Because the impossibility of performance defense is well established under Florida law, we conclude that the obligation entered into by Kenco pursuant to paragraph 7 of the purchase agreement is unrestricted.  The inclusion of the clause "or other events which would support a defense based upon impossibility of performance" modifies the preceding list of specific items.  The district court correctly concluded that the only condition that Kenco placed on its ability to complete construction was impossibility.

The Kamels urge us to construe the clause as an additional exception in a list of exceptions, thereby undercutting any notion that the contract was "unrestricted." For example, the Kamels argue that an act of God always gives rise to an impossibility of performance defense under Florida law.  Therefore, any argument that the contract is merely citing factual circumstances that could give rise to the defense of impossibility of performance is disingenuous.  We are unpersuaded.

8

Paragraph 7 provides a nonexhaustive sampling of factual conditions which might provide the basis for an impossibility of performance defense. That defense is available to Kenco regardless of what the contract provides. If Kenco were to raise the defense, a court would have to make a factual inquiry into its basis and determine whether an impossibility defense was warranted. As the district court correctly noted, the contractual language does not condition Kenco's obligation nor does it expand any remedy that Kenco would not otherwise have at law.

The district court granted Kenco's motion to dismiss both the Kamels' federal and state law claims. We conclude that the district court did not err in granting Kenco's motion to dismiss the Kamels' federal claims. We extend our conclusion to the court's decision regarding the Kamels' state law claims. It is well settled in our circuit that "if ... federal claims are dismissed prior to trial, [United Mine Workers v.] Gibbs [383 U.S. 715, 86 S. Ct. 1130 (1966)] strongly encourages or even requires dismissal of the state claims." L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 428 (11th Cir. 1984).

### III.  CONCLUSION

The Kamels appeal an order by the district court granting a motion to dismiss their complaint. We conclude that Kenco's obligation to build was unrestricted and that the contract between the Kamels and Kenco was exempted

9

from the ILSA's coverage.  Accordingly, we AFFIRM the judgment of the district court.