**Richard JANKUS, plaintiff,**

v.

**The EDGE INVESTORS, L.P., defendant.**

**Case No. 08–80200–CIV.**

United States District Court, S.D. Florida.

Aug. 31, 2009.

James Daniel Ryan, Ryan & Ryan Attorneys PA, Timothy Powers O'Neill, Schwed, McGinley, Kahle, LLC, North Palm Beach, FL, for plaintiff.

Sandra Jessica Millor, Stephen James Binhak, Greenberg Traurig, Miami, FL, Geoffrey Michael Cahen, Greenberg Traurig et al., Boca Raton, FL, for defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION [DE # 67] & AMENDED ORDER PARTIALLY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DE # 31] & DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DE# 21]**

DANIEL T.K. HURLEY, District Judge.

**THIS CAUSE** is before the court upon the defendant's motion for reconsideration of order entered April 8, 2009 partially granting the plaintiff's motion for summary judgment [DE# 67], plaintiff's response in opposition [DE# 69] and the defendant's reply [DE# 70]. Upon consideration, the court has determined to grant the defendant's motion for reconsideration, withdraw its opinion memorandum entered April 8, 2009 [DE# 66], and substitute the following opinion memorandum in its stead.

**I. Facts and Procedural Background**

The Edge is a developer and seller of residential condominium properties located in Florida, including The Edge West Palm Beach Condominium, a 16–story condominium building consisting of 307 units located at 300 Australian Avenue, West Palm Beach, Florida.

On July 6, 2005, Jankus signed a contract to purchase ("Purchase Agreement") a $345,000.000 condominium unit from The Edge. Pursuant to the Agreement, Jankus has paid deposits totaling $74,400.00 toward that purchase.

The Purchase Agreement contains the following language pertaining to the "completion date":

Seller agrees to substantially complete construction of the Unit, in the manner specified in this Agreement, by a date no later than two (2) years from the date Buyer signs this Agreement, subject, however, only to delays caused by matters which are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected (the "Outside Date").

Purchase Agreement ¶ 7 [DE# 10–3].

On June 27, 2007, the City of West Palm Beach issued a certificate of conditional occupancy for The Edge, certifying that the structure "is complete enough to be safely occupied ... prior to issuance of the final certificate of occupancy." The certificate provides that it is valid for a period of 30 days, and that final certificate of occupancy must be obtained within that period, failing which occupancy maybe terminated.[1] The City issued a second certificate

---

1. The outstanding conditions specified for is- suance of final certificate of occupancy in-

of conditional occupancy on July 27, 2007, listing most of the same outstanding items (minus the FPL transformer issue), and issued a final certificate of occupancy on August 27, 2007.

In his pending three-count complaint, Jankus claims that the Edge violated the Interstate Land Sales Full Disclosure Act (ILSA) by failing to give him a property report disclosure and notice of his related right to rescind under 15 U.S.C. § 1703(c). He also claims that the Edge violated the ILSA by using a contract form that does not contain a limitations of damage provision and notice and right to cure in accordance with 15 U.S.C. § 1703(d) or a legal description of the property as required by § 1703(d)(1). He seeks various remedies in his ILSA claim, including rescission of the contract, damages, interest, costs and attorneys' fees. (Count 1).

Jankus also asserts a state law breach of contract claim based on The Edge's alleged failure to complete construction of the unit within two years of his execution of the Purchase Agreement. (Count 2). Finally, he asserts claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), contending that The Edge's violation of the ILSA constitutes a *per se* violation of the FDUTPA, and further, that The Edge made certain deceptive or misleading representations regarding the price of title insurance charges passed through under the contract (Count 3).

cluded:
1. Completion of City's landscape architect punch list;
2. Eight townhouse units not released for occupancy;
3. Removal of temporary FPL transformer;
4. Installation of expansion joint cover in garage;
5. Adjustments and modification to building signage to be made as directed by inspector;

## II. Issues Presented on Cross Motions for Summary Judgment

Both parties have moved for summary judgment on all three claims [DE# 21, 31].

With regard to the ILSA rescission claim, plaintiff alleges that this condominium sale is subject to the ILSA and that defendant failed to provide him with certain disclosures in violation of the ILSA. Specifically, plaintiff complains that he was not provided with a property report and that there was no provision in the Purchase Agreement of his corresponding right of revocation.

It is undisputed that Jankus did not receive a property report meeting the requirements of § 1703(a) of ILSA. It is also undisputed that the Purchase Agreement does not contain language prescribed by § 1703(c) pertaining to a buyer's right to rescind in the event of such nondisclosure.

The defendant counters that is exempt from the ILSA's requirements because the Purchase Agreement promised to complete construction within two years.[2]

The building exemption at issue, 15 U.S.C. § 1702(a)(2), provides:

§ 1702. Exemptions

(a) Sale or lease of lots generally. Unless the method of disposition is adopted for the purpose of evasion of this title, the provisions of this title shall not apply to—

. . . .

6. Labeling and listing of all domestic dryer vent transition ducts;
7. Installation of FDC connector caps as directed by Fire Marshall;
8. Satisfaction of any inspection requests on remaining open permits.

2. If not exempt, defendant alternatively argues that plaintiff's ILSA claim is time-barred because he failed to seek rescission within the two year time period prescribed by § 1703(c).

(2) the sale or lease of any improved land on which there is a residential, commercial, condominium or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years.

Plaintiff contends that defendant is not entitled to claim this building exemption because it failed to unconditionally commit to complete construction of his unit within two years. Specifically, plaintiff contends that the developer's two year building obligation is illusory because it is subject to extension for any "matters which are legally recognized as defenses to contract actions" in Florida. Under plaintiff's view, this qualification gives the seller a too wide breadth of discretion to extend the completion date based on foreseeable and unforeseeable events, rendering its two year building commitment illusory.

Thus, the issue presented is whether the Purchase Agreement contains a true commitment to construct the condominium unit within two years or whether the commitment is illusory in light of the conditions for extension.

For reasons discussed below, this court agrees that the Agreement is exempt from ILSA under the building exemption set forth at 15 U.S.C. § 1702(a)(2) and shall accordingly grant the defendant's motion for summary judgment as it relates to the plaintiff's ILSA rescission claim only. In light of this conclusion, it is unnecessary to reach the defendant's alternative challenge to the timeliness of the ILSA rescission claim.

The parties' cross-motions for summary judgment are otherwise denied as to all remaining claims.

### III. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

An issue is "material" if it is a legal element of the claim under applicable substantive law that may affect the resolution of the action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *Id.*

The movant may meet this standard by presenting evidence demonstrating the absence of a dispute of material fact, or by showing that the nonmoving party has not presented evidence in support of an element of its case on which it bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–33, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). It is not necessary for the moving party to supply affidavits or other similar materials negating the opponent's claim. *Id.*

Once the movant meets its initial burden of proof, the nonmovant must "go beyond the pleadings" and by affidavit, deposition testimony, answers to interrogatories and admission, designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2552–53. The nonmovant need not present evidence that would be admissible at trial, but "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505, 91 L.Ed.2d 202.

At the same time, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore

the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505, 91 L.Ed.2d 202. The nonmovant need not be given the benefit of every inference, but only of every reasonable inference. *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988).

## IV. Discussion

### A. ILSA Claim

#### 1. ILSA Statutory Goal

■ The Interstate Land Sales Full Disclosure Act (ILSA) is "an anti-fraud statute utilizing disclosure as its primary tool," designed to "protect purchasers from unscrupulous sales of undeveloped home sites." *Winter v. Hollingsworth Properties, Inc.,* 777 F.2d 1444–1447 (11th Cir.1985). Toward this end, ILSA requires developers to inform buyers, prior to purchase of subdivision lots, of facts which would enable a reasonably prudent individual to make an informed decision about purchasing the property. *Paquin v.*

*Four Seasons of Tennessee, Inc.,* 519 F.2d 1105, 1109 (5th Cir.1975).[3]

■ In light of its remedial objectives, ILSA must be applied liberally in favor of broad coverage, with its exemptions narrowly construed, to ensure that Congress's essential purpose in enacting its remedial provisions is not frustrated. *See Kamel v. Kenco/The Oaks at Boca Raton LP,* 321 Fed.Appx. 807, 809–10 (11th Cir.2008)(unpub); *Olsen v. Lake Country, Inc.,* 955 F.2d 203, 206 (4th Cir.1991, *cert. den.,* 503 U.S. 972, 112 S.Ct. 1587, 118 L.Ed.2d 306 (1992)); *Gentry v. Harborage Cottages–Stuart, LLLP,* 602 F.Supp.2d 1239 (S.D.Fla.2009); *Pigott v. Sanibel Development, LLC,* 576 F.Supp.2d 1258, 1268 (S.D.Ala.2008); *Sun Kyung Ahn v. Merrifield Town Center Ltd. Partnership,* 584 F.Supp.2d 848 (E.D.Va.2008); *200 East Partners, LLC v. Gold,* 997 So.2d 466 (Fla. 4th DCA 2008).

■ The burden of establishing the applicability of an exemption as an affirmative defense to an ILSA claim falls to the defendant invoking it. *See e.g. Melhorn v.*

---

**3.** Thus, before selling or leasing any non-exempt "lot," a developer or agent engaged in interstate land sales must first (1) file a "statement of record" with the Department of Housing and Urban Development ("HUD") pursuant to 15 U.S.C. § 1704, and (2) provide a "property report" to the purchaser before he or she signs any contract or agreement pursuant to 15 U.S.C. § 1703(a)(1).

A "lot" refers to interests in realty, including condominiums. *Winter v. Hollingsworth Properties, Inc.* 777 F.2d 1444 (11th Cir.1985). Although the statute exempts lots in subdivisions containing less than 100 lots from the registration and disclosure requirements of ILSA, in this case it is undisputed that the 100 lot exemption is not applicable.

The property report is an extensive disclosure that must include an identification of all interested persons; legal description of the subdivision; statement of the condition of title to the land; statement of general terms and conditions (including range of selling prices);

statement of present condition of access to the subdivision; existence of unusual conditions relating to noise or safety; availability of sewage disposal and other public utilities; proximity to nearby municipalities, nature and completion schedule for proposed improvements; statements relating to blanket encumbrances, and such other information as the HUD Secretary might require as reasonably necessary for protection of purchasers. 15 U.S.C. §§ 1705, 1707.

ILSA also requires the seller to provide the buyer with a specific description of the lot being purchased and to inform him of the consequence and remedies of default by either the buyer or the seller, failing which the contract becomes revocable at the option of the purchaser for a period of two years after signing. 15 U.S.C. § 1703(d). The purchaser has a right of revocation, running two years from the date of signing, when the seller fails to timely furnish the required property report. 15 U.S.C. § 1703(c).

*AMREP Corp.,* 373 F.Supp. 1378 (M.D.Pa.1974)(burden of establishing applicability of relevant statute of limitations as affirmative defense falls to defendant in ILSA action). *See also Murray v. Holiday Isle, LLC,* 620 F.Supp.2d 1302, 1308 n. 8 (S.D.Ala.2009)(defendant seeking to advance ILSA exemption has obligation to identify viable basis in law or fact for claiming it).

██ Federal law governs interpretation of the ILSA, *Sola Electric Co. v. Jefferson Electric Co.,* 317 U.S. 173, 176, 63 S.Ct. 172, 87 L.Ed. 165 (1942), while the Department of Housing and Urban Development's ("HUD") implementing regulations, as interpretative agency rules, are entitled to "great deference." *Winter v. Hollingsworth Properties, Inc.,* 777 F.2d 1444, 1448 (11th Cir.1985).

### 2. HUD Guidelines

HUD has provided guidelines for exemptions available under ILSA. Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act, 61 Fed.Reg. 13596, 13603 (Mar. 27, 1996) ("HUD Guidelines"). According to HUD Guidelines addressing the two year building exemption, a "contract must not allow nonperformance by the seller at the seller's discretion," because such an obligation is "not an obligation in reality." HUD Guidelines, 61 Fed.Reg. 13596, 13603.

HUD Guidelines further provide:

Contract provisions which allow for nonperformance or for delays of construction completion beyond the two year period are acceptable if such provision are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected. For example, provisions to allow time extensions for events or occurrences such as acts of God, casualty losses or material shortages are generally permissible.

. . . .

Although the factual circumstances upon which nonperformance or a delay in performance is based may vary from transaction to transaction, as a general rule delay or nonperformance must be based on grounds cognizable in contract law such as impossibility or frustration and on events which are beyond the seller's reasonable control.

*Id.*

### 3. Application

██ Although federal law governs interpretation of ILSA, state contract law governs whether a contract obligates a seller to build within two years. *See Kamel v. Kenco/The Oaks at Boca Raton, LP,* 321 Fed.Appx. 807 (11th Cir.2008)(unpub). In addressing ILSA, the Florida Supreme Court has stated that, "in order for the developer to be 'obligated' to complete the building within two years, the obligation must be unrestricted and the contract must not limit the purchaser's right to seek specific performance or damages." *Samara Development Corp. v. Marlow,* 556 So.2d 1097, 1100 (Fla.1990).

Most courts have not taken the "unconditionally obligate" language of *Samara* literally. For example, it is generally established that a developer may condition its obligation to timely complete construction on circumstances that would support a defense of impossibility under Florida contract law without nullifying the applicability of the exemption. *See e.g. Kamel v. Kenco/The Oaks at Boca Raton LP,* 321 Fed.Appx. 807 (11th Cir.2008)(unpub);[4]

---

4. *In Kamel v. Kenco/The Oaks at Boca Raton LP,* 321 Fed.Appx. 807 (11th Cir.2008), the court found a developer's two-year building obligation sufficiently unrestricted, rendering the purchase agreement exempt from the ILSA, where a *force majeure* clause required completion within two years subject to "delays caused by buyer, or acts of God, unavailability of materials, strikes, other labor prob-

*Delaura v. Lennar Homes, Inc.,* 2009 WL 2181251 (M.D.Fla.2009); *Bloom v. Home Devco/Tivoli Isles, LLC,* 2009 WL 36594 (S.D.Fla.2009) (contract exempt as long as qualification on developer's obligation to construct was limited to matters which would support impossibility defense, without necessity of specifically referring to "impossibility").

However, there is some difference of opinion on whether performance may be conditioned on matters going beyond pure "impossibility," without forfeiting the exemption. Compare *Winterrowd v. Taylor Morrison Services, Inc.,* 2009 WL 2149239 (M.D.Fla. July 16, 2009)(clause permitting extension of completion date for "adverse weather, shortages of materials or labor, acts of God or other events beyond the control of Seller" constituted examples of impossibility already provided by Florida law and therefore did not make completion date illusory); *Adams–Lipa v. TDS Town Homes (Phase 1) LLC,* 2009 WL 1850267 (M.D.Fla.2009)("casualty" clause intended to act as "acts of God" clause, a valid defense to non-performance which did not render two year obligation illusory) with *Santidrian v. Landmark Custom Ranches, Inc.,* 2009 WL 1955757 (S.D.Fla. 2009)(two year completion obligation held illusory where contract did not limit defendant to defenses recognized as legal defenses under Florida law, but went further to allow as excludable delay events "caused by Buyer, acts of God, unavailability of materials, strikes other labor problems governmental orders or other events beyond seller's control"); *Harvey v. Lake Buena Vista Resort, LLC* 568 F.Supp.2d 1354 (M.D.Fla.2008)(no exemption where seller reserved right to extend completion

date for "any other grounds cognizable in Florida contract law as ... frustration of performance, including without limitation delays occasioned by wind, rain lightning and storms"), *aff'd on other grounds,* 306 Fed.Appx. 471 (11th Cir.2009)(unpub.)(breach of contract); *Stein v. Paradigm Mirsol, LLC,* 551 F.Supp.2d 1323 (M.D.Fla.2008)(no exemption where contract allowed for extension "for any delay caused by acts of God, weather conditions, restrictions imposed by any governmental agency, labor strikes, material shortages or other delays beyond the control of the seller ...").

 In this case, the developer's obligation to construct within two years is simply conditioned generically upon "matters legally recognized as defenses to contract actions in the jurisdiction where the building is being erected." Observing that HUD Guidelines appear to contemplate as excludable periods of delay any events cognizable as a defense to performance under state contract law—with the examples of impossibility, frustration and events beyond seller's reasonable control given as illustrations but not necessarily exhaustive examples—this court concludes that the developer has not expanded the definition of excludable delay so far as to render its obligation to finish construction illusory. Therefore, the court concludes that the conditions placed on its commitment to build do not nullify the applicability of the § 1702(a)(2) exemption. Accordingly, this Purchase Agreement is exempt from the requirements of ILSA. *See, e.g., Gentry v. Harborage Cottages–Stuart, LLLP,* 602 F.Supp.2d 1239 (S.D.Fla.2009); *Pilato v. Edge Investors, LP,* 609 F.Supp.2d 1301,

lems, governmental orders, or other events which would support a defense based upon impossibility." In reaching this conclusion, the court interpreted the final clause—"other events which would support a defense based

upon impossibility of performance"—as one which modified the entire string of preceding events, such that only events qualifying as "impossibility of performance" would excuse delay.

1306 (S.D.Fla.2009); *Stefan v. Singer Island Condominiums Ltd.*, 2009 WL 426291 (S.D.Fla.2009); *Tedder v. Harbour Phase I Owners, LLC*, 2009 WL 1043911 (M.D.Fla.2009). *But see Van Hook v. Residences at Coconut Point, LLC*, 2008 WL 2740331 (M.D.Fla.2008)(developer did not qualify for ILSA exemption because legally recognized defenses to contract actions could go beyond acts of God or matters constituting impossibility, and thus could render building commitment illusory); *Disimone v. LDG South II, LLC*, 2009 WL 210711 (M.D.Fla.2009)(same).

## B. Breach of Contract Claim

In order to prevail on the state law breach of contract claim, Jankus must show that his unit was not "substantially completed" until after July 6, 2007 (more than two years after he signed the contract). The Purchase Agreement defines "substantial completion" as follows:

*Substantial Completion.* Whenever this Agreement requires Seller to complete or substantially complete an item of construction, that term will be understood to be complete or substantially complete when so complete or substantially complete in Seller's opinion. Notwithstanding the foregoing, however, neither the Unit nor the building of which the Unit is a part will be considered complete or substantially complete for purposes of this Agreement unless the Unit (and such portion of the building intended to be used exclusively by Buyer) is physically habitable and usable for the purpose for which the Unit was purchased. The Unit (and such portion of the Building) will be considered so useable if the Unit is ready for occupancy and has all necessary and customary utilities extended to it. Other units (and other portions of the building) may not necessarily be so complete and usable.

Purchase Agreement ¶ 33.

▮ As a threshold matter, the Court notes an apparent contradiction between the first sentence of ¶ 33, which gives Seller unfettered discretion to declare the date of "substantial completion," and the first sentence of ¶ 7, which requires the Seller to achieve "substantial completion" within two years from the date the buyer signs the Agreement. On the one hand, the Seller is reserving to itself the right to define the moment of completion, without liability for any delays, and on the other hand, it is agreeing to achieve completion within two years, subject to delays caused by matters which are legally recognized as defenses to contract actions.

▮ Observing that "a provision that at best says two contradictory things is by its very nature equivocal and illusory," *Van Hook v. the Residences at Coconut Point, LLC*, 2008 WL 2740331 (M.D.Fla. 2008), citing *Hamptons Dev. Corp. v. Sackler*, 522 So.2d 1035, 1035–36 (Fla. 3d DCA 1988); *Am. Boxing & Athletic Assn., Inc. v. Young*, 911 So.2d 862, 865–66 (Fla. 2d DCA 2005), the court questions, at the outset, whether this Agreement contains a true obligation to complete the condominium unit in two years and warns that the inclusion of "catch all" contradictory reservations of this nature could result in forfeiture of the seller's right to claim the two year building exemption.

The court chooses not to adopt this route here only because it reads these two paragraphs in *pari materia*, with the seller's discretionary right to declare the date of "substantial completion" subject and subordinate to the occupancy requirements described in ¶ 33 and the two year limit described in ¶ 7 as criteria for ultimately defining the "outside date" of completion.

■ With this refinement on interpretation of "substantial completion," on the record presented, the court finds genuine issues of material fact pertaining to whether The Edge achieved "substantial completion" within time frame required by this Agreement. Although the undisputed evidence shows that an initial certificate of conditional occupancy issued by the City of West Palm Beach on June 27, 2007, the City did not issue final certificate of occupancy until August 27, 2007.

Moreover, plaintiff presents unrebutted evidence that the building's fire alarm system did not pass the Fire Marshal's final inspection on June 28, 2007. According to opinion testimony of plaintiff's engineering expert, Henry Hillman, this rendered the condominium units unusable for their intended purpose. [DE# 37–4]

The Hillman affidavit, together with attached excerpts of municipal public record regarding the permitting and inspection processes at the Edge, creates a genuine issue of material fact on the issue of whether Jankus' unit was "physically habitable" and "usable for the purpose for which the unit was purchased" on July 7, 2007 within the meaning of the "substantial completion" definition found at ¶ 33 of the Purchase Agreement. Accordingly, the court finds disputed issues of material fact bearing on the breach of contract claim set forth at Count 2 of Plaintiff's Complaint, and shall deny both parties' motions for summary judgment upon this claim.

## C. FDUTPA Claim

Jankus further asserts that The Edge made fraudulent and misleading statements regarding the cost of title insurance in violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count 3).

First, plaintiff claims that a *per se* violation of FDUTPA is established by the defendant's violation of the ILSA. However, because the court has determined to enter summary judgment against plaintiff on the ILSA claim, that alleged federal statutory violation cannot support a claim for violation of FDUTPA.

Second, Jankus alleges that The Edge independently violated FDUTPA by use of the word "minimum" to describe the cost of title insurance passed through to the buyer under the Purchase Agreement. According to Jankus, the defendant's reference to the "minimum rate" promulgated by the Florida Department of Insurance is likely to mislead purchasers because it suggests that the buyer is obtaining the insurance at the lowest available rate, and that the developer is simply passing this cost through to a third party, when in fact the title insurance fee includes both a risk premium portion (intended to cover risk assumed by the title insurer) and a policy premium portion (representing profit retained by the developer).

The contract language at issue is found at ¶ 11(a) of the Purchase Agreement, which states in pertinent part:

Buyer understands and agrees that, in addition to the Purchase Price for the Unit, Buyer must pay certain other fees, costs or other sums when the Unit is delivered to buyer at closing. These include:

(a) A "development fee" equal to one and one half percent (1.5%) of the Purchase Price ... This fee will be used, in part, to pay for the following closing costs: (i) the costs of officially recording the deed in the Public Records of the County ... (ii) the documentary stamp taxes payable in connection with the deed conveying the Unit to Buyer ... and (iii) the premium on the owner's title insurance policy, at the minimum promulgated risk rates promulgated by the Florida Insurance Commissioner ... whether obtained from Seller's closing

agent, or elsewhere. The balance of the "development fee" shall be retained by Seller to provide additional revenue and to offset certain of its construction and development expenses, including without limitation certain of seller's administrative expenses and seller's attorneys' fees in connection with the development of the Condominium.

[DE# 2–2, p. 5].

 For purposes of the FDUTPA, the inquiry is how a reasonable consumer would interpret the phrase "minimum promulgated risk rates promulgated by the Florida Insurance Commissioner." *See e.g. Latman v. Costa Cruise Lines, N.V.,* 758 So.2d 699, 703 (Fla. 3d DCA 2000). The court finds an issue of material fact as to whether a reasonable consumer would interpret this language to mean that at least a portion of the "development. fee" represented a "pass through" charge which the developer collected to pay to the relevant title insurer, and whether the developer's retention of part of that fee as profit constitutes a deceptive practice under FDUTPA.

### V. Conclusion

In accordance with the foregoing, it is **ORDERED AND ADJUDGED:**

1. The defendant's motion for reconsideration of order granting plaintiff's motion for summary judgment [DE# 67] is **GRANTED.** The order entered April 8, 2009 partially granting plaintiff's motion for summary judgment [DE# 66] is accordingly now **VACATED,** and the foregoing memorandum opinion is substituted in its stead.

2. The defendant's motion for summary judgment [DE# 31] is **GRANTED** with respect to the ILSA claims asserted in Count 1 and the *per se* FDUTPA claims asserted at Count 3 of the Plaintiff's Complaint. Final partial summary judgment in favor of defendant shall accordingly en-

ter upon these claims by separate order of the court.

3. The defendant's motion for summary judgment [DE# 31] is **DENIED** with respect to the breach of contract claim asserted in Count 2 of the Plaintiff's Complaint, and **DENIED** with respect to the independent FDUTPA claim asserted at Count 3 of the Plaintiff's Complaint.

4. The plaintiff's motion for summary judgment [DE# 21] is **DENIED.**