

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00043-CV

TIMBERCREEK CANYON PROPERTY
OWNERS ASSOCIATION, INC., APPELLANT

V.

CARL FOWLER, ET AL, APPELLEES

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 62,758-C, Honorable Ana Estevez, Presiding

August 12, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

In this real property dispute involving restrictive covenants and a private subdivision, appellant Timbercreek Canyon Property Owners Association, Inc., appeals a take-nothing summary judgment and award of attorney's fees in favor of appellees.[1] Finding the trial court did not err, we will affirm the judgment.

---

[1] Initially appellee Carl Fowler was the only defendant in the litigation. Ann Craig and Kenneth Craig, Roy McCormick and Cynthia McCormick, Bob Cruger, Cliff Higgins and Jeana Higgins, Jerry Norman, Rick Redman, Ron Williams, Michael Slagle and

Background

Developed in the late 1970s, the Timbercreek Canyon subdivision is located in rural Randall County, near Amarillo. The association was created in 1978. By a deed recorded in 1978 the subdivision's developer conveyed to the association, among other things, "All roads located in the Timbercreek Canyon Subdivision, Units 1 through 9." The deed also contains language stating that after January 1, 1979, the association would assume responsibility for maintenance of the paved roads in the subdivision.[2]

In 1983, the subdivision incorporated into the Village of Timbercreek Canyon. Tax revenue collected by the village was used for road maintenance and upkeep. A lawsuit brought by some village residents lead to a 2001 judgment which, among other things, declared the roads within the village were private and the village improperly expended public funds for their maintenance and upkeep. The court permanently enjoined the village from expending funds under its control "for any purpose related to the roads within the Village, including maintenance or upkeep . . . ."

_____

Karen Slagle, Allan Wehenkel and Candy Wehenkel, Mike Campbell and Barbara Campbell, Jimmie Smart and Christine Smart, Gary Bennett and Joyce Mae Bennett intervened and were aligned with Fowler. In this opinion, we refer to appellees collectively as "the homeowners."

[2] The deed contains the signature of an individual designated as the association's president, below the language, "Agreed and Accepted: TIMBERCREEK CANYON PROPERTY OWNERS' ASSOCIATION."

In March 2009, the association adopted bylaws[3] stating, "People become members [of the association] by owning property in the Village of Timbercreek Canyon." They provide also, "The Board of Directors shall announce their proposal of the amount to be set for dues for the coming year to the [association] membership by December." And, "All roads within the Association's jurisdiction shall be maintained for the benefit of the property owners. Adequate funding shall be allocated for the repair and maintenance of all roads. Gates are essential to the purpose of the Association. Adequate funding shall be allocated for the maintenance and repair of the Association's gates."

The directors set dues in the amount of $250 a year. Pleadings in the record state the association sent invoices for the dues in January 2010 and past due notices in June of that year. Appellee Fowler did not pay the dues, and in August 2010, the association filed suit against him.

The association's pleadings sought a judgment declaring that Fowler was contractually bound to pay "dues and assessments"; that he had breached this obligation by failing to pay when requested by the association; and that the association was empowered to assess annual dues. The association also sought damages from Fowler for his alleged breach of an express or implied contract requiring him to pay the annual dues of $250. Alternatively, should the court find an easement in favor of homeowners to use the village roads, the suit asked that the court declare that homeowners were obligated to repair and maintain the roads and if they failed to do so,

_____

[3] The March 2009 bylaws were new bylaws for the association. The association's summary judgment evidence refers to the "old" bylaws, but they are not contained in the record.

they were obligated to reimburse the association for road repair and maintenance. Finally the association alleged in the absence of an express contract the homeowners were obligated in equity for repair and maintenance expenses.

In November 2010, Fowler filed a counter-petition, asserting he was not a member of the association and no deed or other document required him to pay its dues. He alleged the association violated the Texas Unfair Debt Collection Act. In March 2011, the other appellees intervened in the suit, asserting claims like those made by Fowler.[4]

The homeowners filed no-evidence and traditional motions for summary judgment challenging the association's entire case.[5] The trial court rendered a take-nothing summary judgment in favor of the homeowners on all the association's claims. Attorney's fees were submitted to the court which rendered judgment in the amount of $7,500 for the homeowners.

Analysis

The association presents four issues on appeal. Its first, second and third issues relate to the grant of summary judgment in favor of the homeowners; its fourth issue concerns the attorney's fees awarded the homeowners. We will first address, together,

---

[4] In addition to their counterclaims alleging violations of the Texas Unfair Debt Collection Act, the homeowners sought declaratory relief, and requested an award of attorney's fees. The homeowners' counterclaims were tried by jury and the trial court directed a verdict in favor of the association. After filing a notice of appeal, the homeowners voluntarily dismissed the appeal. *See Timbercreek Canyon Prop. Owners Ass'n v. Fowler,* No. 07-14-00043-CV, 2014 Tex. App. LEXIS 7882 (Tex. App.—Amarillo July 21, 2014, no pet.) (per curiam, mem. op.).

[5] Three other village property owners later intervened in support of the association. They subsequently withdrew themselves from the case by nonsuit.

4

the association's three issues challenging the trial court's take-nothing summary judgment.

Summary Judgment

An appellate court reviews a trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). The party moving for summary judgment bears the burden of proof. *Neely v. Wilson,* 418 S.W.3d 52, 59 (Tex. 2013). Though these burdens vary for traditional and no-evidence motions, the summary judgment motion here was a hybrid motion and both parties produced summary judgment evidence, rendering the differing burdens immaterial as the ultimate issue is whether a fact issue exists. *Id.* (citing *Buck v. Palmer,* 381 S.W.3d 525, 527 & n.2 (Tex. 2012)). An issue of material fact exists if there is more than a scintilla of probative evidence. *Id.* (citing *Buck,* 381 S.W.3d at 527 and TEX. R. CIV. P. 166a(c),(i)). The summary judgment record is reviewed "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Id.* at 59-60 (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 824 (Tex. 2005)).

The association's contention the homeowners are obligated to pay the dues it assesses is based primarily on a 1978 "property report" signed by the subdivision's developer and required by federal law to be filed with the Department of Housing and Urban Development.[6] The HUD property report contains this statement:

---

[6] The Interstate Land Sales Full Disclosure Act (ILSFDA), requires a "statement of record," 15 U.S.C.A. 1704(a) (West Supp. 2015), containing information and documents about a subdivision to be filed with the Secretary of Housing and Urban Development when a developer uses a means of interstate commerce or the mails to sell or lease a lot in a non-exempt subdivision. *See* 15 U.S.C.A. 1707 (West Supp.

Buyers are required to pay $4.00 per unimproved lot per month, and $5.00 per improved lot (i.e., lots with homes built thereon) per month to the Timbercreek Canyon Property Owner's Association for the purpose of providing funds for the maintenance of the common facilities and roads within the subdivision. The Property Owners' Association holds title to all common facilities and roads, is currently responsible for maintenance of the common facilities, and will become responsible for maintenance of the roads on January 1, 1979.

The association argues that statement and others like it in the HUD property report[7] ripened into restrictive covenants, obligating the homeowners and other subdivision property owners to pay dues in the amount set by the association's board of directors.

Chapter 202 of the Texas Property Code addresses construction and enforcement of restrictive covenants. It applies to all restrictive covenants regardless of the date of their creation. TEX. PROP. CODE ANN. § 202.002(a) (West 2014). It defines a restrictive covenant as "any covenant, condition, or restriction contained in a dedicatory

_____

2015) (property report); 15 U.S.C.A. § 1703(a)(1)(A),(B) (West 2009); 15 U.S.C.A. § 1704 (West Supp. 2015) (registration of subdivisions); 15 U.S.C.A. § 1702(b) (West 2009 & Supp. 2015) (exemptions from registration). *See also Kamel v. Kenco/The Oaks at Boca Raton LP,* 321 Fed. Appx. 807, 809, 2008 U.S. Dist. LEXIS 21762 at *3 (11th Cir. 2008) (per curiam) (internal quotation marks and brackets omitted) (noting the ILSFDA is "an antifraud statute utilizing disclosure as its primary tool with the principal purpose of protecting purchasers from unscrupulous sales of undeveloped home sites"); 19-82 TEXAS TRANSACTION GUIDE: LEGAL FORMS § 82.23 (LexisNexis Matthew Bender 2015) (discussing federal regulation of subdivisions).

[7] The parties have stipulated that the HUD property report in the record was produced by the association in response to a discovery request. The parties have a disagreement over the manner in which the produced report may properly be used under the procedural rules. We will assume, but need not decide, that the property report is properly included in the summary judgment record for use by the homeowners and the association. The ILSFDA requires a developer to provide a version of its HUD property report to each lot purchaser. 15 U.S.C.A. 1703(a)(1)(B) (West 2009); 15 U.S.C.A. 1707 (West Supp. 2015). The summary judgment record does not indicate whether any of the homeowners received such a report, and the question is not material to our disposition of the appeal.

instrument, whether mandatory, prohibitive, permissive, or administrative."  TEX. PROP. CODE ANN. § 202.001(4) (West 2014).[8]

But the 1978 HUD property report cannot be effective as a dedicatory instrument creating a restrictive covenant applicable to the subdivision because, so far as the summary judgment record shows, it was not recorded in the Randall County real property records.  *See* TEX. PROP. CODE ANN. § 202.006(b) (West 2014) (dedicatory instrument has no effect until filed in real property records).  Assuming, without deciding, that the HUD property report meets the definition of dedicatory instrument,[9] the property report contained in the summary judgment record is not file-marked, and the summary judgment record otherwise gives no indication the report ever was filed for record in Randall County.

---

[8] "Dedicatory instrument" means each document governing the establishment, maintenance, or operation of a residential subdivision, planned unit development, condominium or townhouse regime, or any similar planned development.  The term includes a declaration or similar instrument subjecting real property to:
(A) restrictive covenants, bylaws, or similar instruments governing the administration or operation of a property owners' association;
(B) properly adopted rules and regulations of the property owners' association; or
(C) all lawful amendments to the covenants, bylaws, instruments, rules, or regulations.

TEX. PROP. CODE ANN. § 202.001(1) (West 2014).

[9] It is unclear to us that the HUD property report governs the establishment, maintenance, or operation of the subdivision.  *See* TEX. PROP. CODE ANN. § 202.001 (West 2014) (defining dedicatory instrument); *Murray v. Holiday Isle, LLC,* 620 F. Supp. 2d 1302, 1309 (S.D. Ala. 2009) ("The fundamental purpose of the [ILSFDSA's] property report requirement is to provide information designed to assist potential buyers in making a fully-informed decision whether to purchase).

Breach of Express Contract

It is likewise contended that the HUD property report is a binding contract between the association and subdivision property owners containing restrictive covenants that run with the land. Restrictions in a dedicatory instrument are treated as contracts between the parties. *Mitchell v. LaFlamme,* 60 S.W.3d 123, 128 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see Davis v. Canyon Creek Estates Homeowners Ass'n,* 350 S.W.3d 301, 313 (Tex. App.—San Antonio 2011, pet. denied) ("A restrictive covenant is a contract subject to the same rules of construction and interpretation as any other contract").

But we see in the summary judgment record no evidence the HUD report's statement that lot purchasers "are required" to pay even $4.00 or $5.00 per month to the association was incorporated into any contract between a homeowner and the developer, or between a homeowner and the association. Nor does the summary judgment record contain a deed to a homeowner, or a similar instrument, that incorporates, or even refers to, the payment obligation.[10]

If restrictive covenants obligating subdivision homeowners to pay assessments for road maintenance to the association exist, they are established by a dedicatory instrument not contained in the summary judgment record. Without a valid dedicatory instrument or an express contract there was no basis for the association's requested declaratory relief or its claim of breach of an express contract by the homeowners.

---

[10] *Cf. High Knob Assocs. v. Douglas,* 249 Va. 478, 487-89, 457 S.E.2d 349, 354-55 (1995) (finding, under Virginia law, language in contract for sale referencing property report was sufficient to incorporate the report into contract).

Breach of Duty to Repair and Maintain Easement

According to its petition, the association asserted a claim the homeowners had breached a duty to maintain an easement or other prescriptive right of access over the association's community areas or roads but only if the court determined that the homeowners have such easement or prescriptive rights. Nothing in the record shows the trial court determined the homeowners hold such rights. For that reason, the question of their breach of an asserted duty dependent on their ownership of such rights is moot at this stage, and we do not address it.

Equitable Claims

As an alternative, assuming the absence of an express contract, the association asserts entitlement to equitable relief through theories of quantum meruit and unjust enrichment.

Pertinent to our consideration of these claims is the following summary judgment evidence. Excerpts from the deposition of Clifford Higgins indicate he is a former member of the association's board. According to Higgins, during his service on the board it was the board's position that payment of association dues was voluntary. He pointed out that another former board member "over and over" said dues were voluntary. Higgins believed dues were voluntary "[b]ecause there was nothing to indicate they were mandatory." He added, nothing in the "old bylaws or the new bylaws" required mandatory payment of association dues. Carl Fowler testified by deposition that he was on the association board at the time of the village's incorporation. He believed the association sought incorporation because the voluntary

9

dues did not generate sufficient revenue to maintain the subdivision roads. Tim Koetting, president of the association at the time of his summary judgment affidavit, testified that the association bylaws create automatic association membership for each subdivision property owner. And the bylaws authorize the association to set and collect member dues. At the time annual dues were $250.

The summary judgment evidence supporting the homeowners' traditional motion includes a November 2009 letter from the association's board received by Fowler. It contains the salutation, "Dear Property Owner." Among other things the letter states, "The original developers did not file the Maintenance Fund fee as a mandatory fee with HUD so voluntary payment over the years has been sporadic at best." According to his affidavit, property owner Jerry Norman retained an attorney in 1997 to determine whether he was legally obligated to pay association dues. In a letter to Norman the attorney states, "a property owner may not be involuntarily made the subject of the property owners' association or its actions unless membership in the home owners' association is made mandatory by virtue of a record filing (deed of dedication, original covenants and restrictions, etc.) of which the home owner has real or constructive knowledge at the time of acquisition or the home owner voluntarily subjects himself to membership. . . . The copies of the older restrictions etc. which were provided by you to this office do not appear to make ownership in the Timbercreek Canyon Property Owners' Association subject to mandatory membership in the home owners' association." An October 1993 letter from the then-president of the association, bearing the salutation "Dear Timbercreek Property Owner," states, among other things, "The dues have been voluntary and still are." Notes from an October 2000 director's meeting

include the inquiry, "Should a letter explaining the voluntary nature and useful purpose of [association] dues be provided to new residents?" Finally, an April 2009 e-mail from Jeff Roddahl, who from May 2012 until June 2013 was aligned by intervention with the association in the litigation, includes the statements, "I'd like to do what I should have done before: to simply explain in a positive way why I contribute to the [association], even though it's 'optional' and not required by law," and "we have a system in place that depends on all of us to voluntarily contribute to the best of our ability. Without those contributions to the [association] and the sweat expended by a relatively small group of volunteers, our roads will fall apart."

*Quantum Meruit*

A party seeking recovery in quantum meruit must prove: (1) valuable services were rendered or materials furnished; (2) for the person to be charged; (3) the person to be charged accepted, used, and enjoyed the services or materials; (4) under circumstances sufficient to reasonably notify the person sought to be charged that by rendering the services or furnishing the materials the party seeking recovery expected payment by the person to be charged. *Bashara v. Baptist Mem'l Hosp. Sys.,* 685 S.W.2d 307, 310 (Tex. 1985). "The 'notice' element focuses on what the recipient of the services knew or should have known at the time the services were accepted." *Myrex Indus., Inc. v. Ortolon,* 126 S.W.3d 548, 551 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Looking to the summary judgment evidence the association offered and then to that of the homeowners, and viewing it in the light most favorable to the association, we

see nothing that would lead a reasonable mind to conclude the association rendered road maintenance and repair services with the expectation of payment by homeowners who did not believe they were obligated to pay. Koetting's affidavit does not provide evidence the homeowners knew or should have known that their continued use of the subdivision's roads after the adoption of the 2009 bylaws was the acceptance of a service for which the association expected to be paid. His affidavit does not address at all what the homeowners knew or should have known regarding their continued use of the roads after the adoption of the new bylaws.

*Unjust Enrichment*

The principle of unjust enrichment appears closely related to quantum meruit. *Bashara,* 685 S.W.2d at 310 (explaining quantum meruit "is founded in the principle of unjust enrichment"). Whether characterized as a cause of action or a theory of recovery, unjust enrichment is an implied-in-law contractual basis to require restitution when it would work an injustice to allow benefits received to be retained. *Perales v. Bank of Am., N.A.,* Civil Action No. H-14-1791, 2014 U.S. Dist. LEXIS 111563, at *8 (S.D. Tex. Aug. 11, 2014) (citing *Walker v. Cotter Props., Inc.,* 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.)). When a party is unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation on the party to restore the benefits to the party deprived. *Barrett v. Ferrell,* 550 S.W.2d 138, 143 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.). A claim of unjust enrichment generally requires a basis for the law to infer a promise by one party to another for payment of a benefit or property. *Berger Eng'g Co. v. Village Casuals, Inc.,* 576 S.W.2d 649, 652 (Tex. Civ. App.—Beaumont 1978, no writ) ("there must exist between the

12

parties an implication that the party performing the services would be paid by the party accepting and benefiting by them"). Unjust enrichment may be proper when a party obtains a benefit from another by fraud, duress, or taking undue advantage. *Heldenfels Bros. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex. 1992). It may also be available if a contract is unenforceable, impossible, not fully performed, or void for other legal reasons. *SCI Texas Funeral Services, Inc. v. Hijar,* 214 S.W.3d 148, 156 (Tex. App.—El Paso 2007, pet. denied); *French v. Moore,* 169 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

Here the summary judgment record contains no evidence that the homeowners obtained from the association road repair and maintenance services by fraud or duress or otherwise did so under circumstances resulting in an unfair advantage to the homeowners. As noted, the record is replete with evidence that payment of association dues was voluntary for property owners. And there is no summary judgment evidence that when the association obtained repair and maintenance of roads it did so under circumstances sufficient to reasonably notify the homeowners that the association expected repayment by the homeowners who disagreed with its assessment of dues. The record before us provides no reasonable basis for the application of the doctrine of unjust enrichment to the homeowners' use of roads in the subdivision, even after their repair and maintenance by the association.

The trial court did not err by rendering judgment that the association take nothing by all of its claims. We overrule the association's issues one through three.

13

Attorney's Fees in Action for Declaratory Judgment

In its fourth issue, the association challenges the trial court's award of attorney's fees to the homeowners. The association's complaint seems to be that the trial court did not reference the guiding principles it relied on to award attorney's fees and its award is therefore not equitable and just.

In a declaratory judgment action, "the court may award . . . reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015). Either party may recover attorney's fees regardless of which party sought declaratory relief. *Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist.,* 198 S.W.3d 300, 318-19 (Tex. App.—Texarkana 2006, pet. denied); *GeoChem Tech. Corp. v. Verseckes,* 929 S.W.2d 85, 91-92 (Tex. App.—Eastland 1996), *rev'd on other grounds,* 962 S.W.2d 541 (Tex. 1998) (finding where plaintiff's lawsuit included a claim for declaratory relief, trial court did not abuse its discretion in awarding attorney's fees under section 37.009 to defendants after rendering judgment in their favor). A non-prevailing party may recover an award of attorney's fees in a declaratory judgment action. *Hansen v. JP Morgan Chase Bank,* N.A., 346 S.W.3d 769 (Tex. App.—Dallas 2011, no pet.) (citing *Martin v. Cadle Co.,* 133 S.W.3d 897, 906-07 (Tex. App.—Dallas 2004, pet. denied); *City of Temple v. Taylor,* 268 S.W.3d 852, 858 (Tex. App.—Austin 2008, pet. denied).

Civil Practice and Remedies Code section 37.009 "affords the trial court a measure of discretion in deciding whether to award attorney fees or not." *Bocquet v. Herring,* 972 S.W.2d 19, 20 (Tex. 1998). We therefore review its decision to award

attorney's fees for an abuse of discretion. *Ridge Oil Co. v. Guinn Invs., Inc.,* 148 S.W.3d 143, 163 (Tex. 2004) (citing *Bocquet,* 972 S.W.2d at 21). Four express limitations constrain the court's discretion, however. *Id.* at 21. Any attorney's fees awarded must be reasonable, necessary, equitable, and just. *Id.* The reasonableness and necessity of an award are questions of fact while the equity and justness requirements are matters of law. *Id.*

As noted, the homeowners' request for attorney's fees was submitted to the trial court. Findings of fact and conclusions of law were neither requested nor filed. We therefore presume the court found every fact necessary to support its award of attorney's fees. *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex. 1987) (per curiam). And we will affirm the judgment's award of attorney fees if it can be upheld on any legal theory finding support in the evidence. *In re W.E.R.,* 669 S.W.2d 716, 717 (Tex. 1984) (per curiam).

The association cites *Double Diamond, Inc. v. Saturn* for the proposition that the award of attorney's fees should be reversed if the record does not reveal the reason for the award. *Double Diamond, Inc. v. Saturn,* 339 S.W.3d 337 (Tex. App.—Dallas 2011, pet. denied). There, the appellate court reversed the summary judgment granted in a declaratory judgment proceeding and remanded the case to the trial court to reconsider its award of attorney's fees in light of the reversal of the summary judgment. *Id.* at 347 (citing *Hartsell v. Town of Talty,* 130 S.W.3d 325, 329 (Tex. App.—Dallas 2004, pet. denied). We have not reversed the trial court's judgment and find *Double Diamond* inapposite.

The homeowners sought a recovery of attorney's fees and costs in the total amount of $23,157.39.  The trial court awarded $7,500.  We are not directed to, nor do we find, anything in the record overcoming the presumption of reasonableness or necessity.  Nor are we shown how the award in the amount rendered is not equitable and just.  We therefore conclude the trial court did not abuse its discretion in awarding the homeowners attorney's fees.  The association's fourth issue is overruled.

Conclusion

Having overruled the association's issues on appeal, we affirm the judgment of the trial court.


James T. Campbell
Justice